## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELLY ECONOMOS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  05-271** |
| | : | |
| **THE SCOTTS COMPANY** | : | |
| | : | |
| | : | |

### MEMORANDUM AND ORDER

**Kauffman, J.**                                                                      **November 20,  2006**

Plaintiff Kelly Economos ("Plaintiff") brings this action against The Scotts Company

("Scotts" or "Defendant") alleging violations of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Cons.

Stat. § 951, et seq. ("PHRA").  Specifically, Plaintiff alleges sexual and pregnancy discrimination

in violation of Title VII and the PHRA (Counts I and III, respectively), and retaliation in

violation of Title VII and the PHRA (Counts II and IV, respectively).  In a Memorandum and

Order dated November 22, 2005, this Court dismissed the pregnancy discrimination claims.

Now before the Court is Defendant's Motion for Summary Judgment as to Plaintiff's remaining

claims.  For the reasons that follow, Defendant's Motion will be granted.

## I. BACKGROUND

This case arises out of Plaintiff's dismissal from her position as a dispatcher at Scotts'

manufacturing and distribution plant in Oxford, Pennsylvania.[1]  The Oxford plant engages in the

production and distribution of bagged soils.  See Ambruso Dec. at ¶ 6.  The business is seasonal

---

[1]        The Oxford facility was operated by Hyponex Corporation, a subsidiary of Scotts.
See Declaration of Joe Ambruso ("Ambruso Dec.") at ¶ 4, attached to Defendant's Motion for
Summary Judgment ("Def.'s Mot.") at Exhibit A.  For purposes of this Memorandum, the Court
will refer to Plaintiff's employer as Scotts.

in nature with the "busy season" typically lasting from mid-March through mid-June, depending on the weather.  See Deposition of Joseph Ambruso ("Ambruso Dep.") at 42, attached to Def.'s Mot. at Exhibit B; Deposition of Jim Witter ("Witter Dep.") at 38-39, attached to Def.'s Mot. at Exhibit C; Deposition of Kelly Economos ("Pl.'s Dep.") at 52-53, attached to Def.'s Mot. at Exhibit E.  Every year, prior to the busy season, the plant's former manager, Joe Ambruso ("Ambruso"), would hold meetings with the employees to discuss "the demands of the impending busy season, as well as the extended hours that would be required of each employee, including the dispatchers."  Ambruso Dec. at ¶ 8; see also Deposition of Mary Dawson ("Dawson Dep.") at 17, attached to Def.'s Mot. at Exhibit D.

At all times relevant to this Motion, the Oxford plant had two full-time dispatcher positions, a long-haul dispatcher and a short-haul dispatcher.  See Pl.'s Dep. at 90.  The dispatchers were responsible for scheduling the delivery of products, finding trucking companies to make the deliveries, and completing all paperwork necessary to ensure that the deliveries were made as scheduled.  See Ambruso Dep. at 22.  The dispatchers were "essential to arranging and coordinating efficient and timely distribution of [Scotts'] bagged soils to [its] wholesale customers."  Ambruso Dec. at ¶ 9.  Throughout the relevant period, Scotts did not have a written overtime policy, but the dispatchers were expected to work more than 40 hours per week during the busy season if necessary to complete their work.  See id. at ¶ 10; Witter Dep. at 27; Dawson Dep. at 17, 99, 103-104; Deposition of John Rule ("Rule Dep.") at 14-15, 18-19, attached to Def.'s Mot. at Exhibit F.

Plaintiff began working for Scotts at the Oxford plant in February 1997 as a temporary employee, but by September 1997 had been promoted to a permanent position in the customer service department.  See Pl.'s Dep. at 77.  When the long-haul dispatcher position became

2

available, Plaintiff applied and was hired in October 2001.  See Pl.'s Dep. at 84, 89.  At the time,

Mary Dawson ("Dawson") held the short-haul dispatcher position.  See id. at 90.  Throughout her

tenure as a dispatcher, Plaintiff was supervised by Ambruso and by Lena Broomell ("Broomell"),

Scotts' customer service and dispatch manager at Oxford.  See Ambruso Dep. at 73; Pl.'s Dep. at

124.

Plaintiff's first busy season as a dispatcher was in 2002.  During the 2003 busy season,

she took six weeks of maternity leave starting May 5, 2003.  Amy Roberts ("Roberts"), another

employee at the Oxford plant, was cross-trained to perform Plaintiff's dispatching duties

throughout the 2003 busy season so as to minimize the disruption when Plaintiff took maternity

leave.  See Ambruso Dep. at 135-37; Pl.'s Dep. at 90-91.  In December 2003, Dawson resigned

as the short-haul dispatcher.  Ron Lambert ("Lambert"), an employee at Scotts' Avondale,

Pennsylvania location, temporarily took over her duties until John Rule ("Rule") was hired as her

replacement in February or March of 2004.  See Ambruso Dep. at 38-39; Rule Dep. at 6.

The 2004 busy season lasted approximately 14 weeks.  See Def.'s Mot. at Exhibit H;

Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp.") at Exhibit

29.  During that time, Roberts worked an average of 57.8 hours per week, Lambert worked an

average of 70.8 hours per week, and Rule worked an average of 63.2 hours per week.[2]  See id.

Plaintiff worked for only 10 weeks of the 2004 busy season, and during those ten weeks averaged

46.2 hours per week.  See id.  Other employees at the Oxford plant helped complete the work not

performed by Plaintiff as a result of the limited number of hours she was working.  See Ambruso

Dec. at ¶ 14.

In early May 2004, Ambruso spoke with Shelly Conway ("Conway") in Scotts' Human

---

[2]        Rule worked as a dispatcher for only 13 of the 14 weeks in the 2004 busy season.

Resources Department about the number of hours Plaintiff was working. See id. at ¶ 16.

Conway suggested that Ambruso have a meeting with Plaintiff to discuss the need for her to

work overtime hours during the busy season. See id. On May 12, 2004, Ambruso met with

Plaintiff and told her that other employees were working more than 40 hours a week and that he

would like her to work more hours than she was currently working. See Pl.s' Dep. at 110.

Plaintiff replied that she could not do that because of her childcare needs. Ambruso again met

with Plaintiff on May 13, 2004 and asked if she had considered the previous day's discussion.

See id. at 113. Plaintiff responded that her childcare needs had not changed. Ambruso told her

that if she would not commit to working 55 hours per week, he would set a schedule for her. See

id.; Def.'s Mot. at Exhibit I, p. 00157.

Ambruso met with Plaintiff for a third time on Friday, May 14, 2004, and gave her a

written work schedule setting a 55 hour work week. See Pl.'s Dep. at 116; Ambruso Dec. at ¶

19. Plaintiff stated that she could not work Ambruso's schedule but that she would volunteer

hours when she could. See Pl.'s Dep. at 116, 118. She also asked to speak with Ambruso's

supervisor, Jim Witter ("Witter"). See Pl.'s Dep. at 116. Plaintiff thereafter spoke with Witter

and told him that she was being "given a schedule and asked to commit to a schedule as to where

[sic] nobody else was. [She] complained that it was unfair." See Pl.'s Dep. at 120. Witter told

Plaintiff that overtime was mandatory and gave her the weekend to find alternative child care.

See Pl.'s Dep. at 121.

After Ambruso spoke with Plaintiff on May 14, he contacted Conway again to inform her

that pursuant to their prior conversation, he had given Plaintiff a work schedule, but that she had

refused to comply. See Ambruso Dec. at ¶ 20. Conway recommended that Ambruso again meet

with Plaintiff and provide her with three options: (1) she could begin working the necessary

overtime; (2) she could resign from her position as dispatcher; or (3) she could apply to work for

Manpower (her former temp agency) and work at the Oxford plant as a temporary employee with

no requirement to work overtime.  See id.

Ambruso met with Plaintiff for a fourth time on May 17, 2004.  Lena Broomell was also

present during the meeting.  After being informed by Plaintiff that her childcare needs had not

changed, Ambruso presented her with the options of (1) working 55 hours a week and

committing to the written schedule he provided; (2) becoming a temporary employee with no

mandatory overtime; or (3) resigning.  See Pl.'s Dep. at 125; Ambruso Dec. at ¶ 21; Broomell

Dec. at ¶ 5; Def.'s Mot. at Exhibit J.  Plaintiff told Ambruso that the options were "completely

unfair."  Pl.'s Dep. at 125.

Following this meeting, Plaintiff called Scotts' Human Resources Department and spoke

with Marcia Agnew regarding the three options Ambruso had presented.  See Pl.'s Dep. at 133;

Declaration of Marcia Agnew ("Agnew Dec.") at ¶ 3, attached to Def.'s Mot. at Exhibit L.

Plaintiff told Agnew that she would not work overtime hours because of childcare needs and that

she was being forced to resign.  See Agnew Dec. at ¶ 3; Pl.'s Dep. at 133.  Agnew contacted

Ambruso and, following a discussion of the problem, told him that she agreed with Conway's

recommendations.  See Agnew Dec. at ¶ 4.  Agnew contacted Plaintiff to confirm that she was

unwilling to work the required hours and then told her that Ambruso would contact her regarding

their decision.  See id. at ¶ 5; Pl.'s Dep. at 134.

Ambruso and Broomell met with Plaintiff again on May 18, 2004.  Plaintiff stated that

the options she had been given were "unreasonable," that "they were being unfair," and that (1)

she would not work the schedule Ambruso had provided, (2) did not want to accept a position as

a temporary employee because she would lose her benefits, and (3) would not resign.  See Pl.'s

Dep. at 128; Def.'s Mot. at Exhibit K.  Ambruso told Plaintiff that the company considered her refusal to work the necessary assigned hours to be a resignation.  See Pl.'s Dep. at 128; Def.'s Mot. at Exhibit K.  Following the meeting, Ambruso and Broomell contacted Conway to discuss Plaintiff's refusal to work overtime or to accept one of the alternatives she had been offered.  See Ambruso Dec. at ¶ 23.  They decided to give Plaintiff the option to resign as of June 9, 2004 and Scotts would not contest her unemployment status, or they would suspend her pending a termination decision.  See id.

After the conversation with Conway, Ambruso and Broomell met with Plaintiff on May 18, and offered her the choice of resigning or being suspended.  See Ambruso Dec. at ¶ 25; Def.'s Mot. at Exhibit K.  When Plaintiff declared that she would not resign, Ambruso informed her that she was suspended pending a decision on termination for insubordination.  See Ambruso Dec. at ¶ 25; Def.'s Mot. at Exhibit K; Pl.'s Dep. at 134-35.  On May 20, 2004, Ambruso informed Plaintiff that she was terminated.  See Ambruso Dec. at ¶ 26.

In June 2004, Plaintiff filed charges of sexual discrimination and retaliation, as well as claims under the Pregnancy Discrimination Act, with the Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission ("PHRC"). On December 2, 2004, the EEOC issued Plaintiff a right to sue notice with respect to her sexual discrimination and retaliation charges, but deemed her pregnancy discrimination charges untimely.  Plaintiff filed the instant action on January 20, 2005, alleging sexual discrimination, pregnancy discrimination, and retaliation.[3]  On November 23, 2005, this Court dismissed all of Plaintiff's pregnancy discrimination claims for failure to exhaust administrative remedies.

**II. LEGAL STANDARD**

---

[3]     The PHRC also issued a right to sue notice on April 29, 2005, after Plaintiff had filed her Complaint.

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial." Id.

## III. ANALYSIS

### A.      Discrimination Claims

Title VII and the PHRA make it illegal for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of sex. See 42 U.S.C. § 2000e-2(a); 43 Pa. Cons. Stat. § 955(a). The two acts are substantially similar, and Pennsylvania courts generally interpret the PHRA consistent with Title VII. See Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("The

proper analysis under Title VII and the [PHRA] is identical as Pennsylvania courts have

construed the two acts interchangeably").  Therefore, the Court will analyze Plaintiff's

discriminatory discharge claims under Title VII, and the conclusions will apply equally to her

claims of discrimination under the PHRA.

In order to establish a prima facie case for discrimination under Title VII, a plaintiff must

demonstrate that: (1) she is a member of a protected class; (2) she was qualified for a position

sought or held; (3) she was discharged from or denied the position; and (4) non-members of the

protected class were treated more favorably.  See McDonnell Douglas Corp. v. Green, 411 U.S.

792, 802 (1973).  If the plaintiff carries her initial burden of establishing a prima facie case, the

burden shifts under the McDonnell Douglas framework to the employer to articulate a legitimate,

non-discriminatory reason for the employee's discharge.  See id.  Once the employer articulates

such a reason, the burden shifts back to the plaintiff to show by competent evidence that the

articulated reason is pretextual.  See id. at 805.

A plaintiff who has made out a prima facie case may defeat a motion for summary

judgment by "(1) discrediting the proffered reasons, either circumstantially or directly, or (2)

adducing evidence, whether circumstantial or direct, that discrimination was more likely than not

a motivating or determinative cause of the adverse employment action."  Sempier v. Johnson &

Higgins, 45 F.3d 724, 731 (3d Cir. 1995) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.

1994)).  "To discredit the employer's proffered reason, the plaintiff cannot simply show that the

employer's decision was wrong or mistaken, since the factual dispute at issue is whether

discriminatory animus motivated the employer, not whether the employer is wise, shrewd,

prudent, or competent.  Rather, the non-moving plaintiff must demonstrate such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765 (internal quotation and citations omitted); see also, e.g., Igwe v. E.I. DuPont de Nemours & Co., 180 Fed. Appx. 353, 356 (3d Cir. 2006) (quoting Abramson v. William Patterson College of N.J., 260 F.3d 265, 283 (3d Cir. 2001)).

Defendant argues that summary judgment is appropriate on Plaintiff's discriminatory discharge claims because she has failed to establish a prima facie case of discrimination. For purposes of this motion, Defendant does not dispute that Plaintiff is able to establish the first and third elements of her prima facie case. See Def.'s Mot. at 18 n.4. However, Defendant argues that she is unable to meet her burden of establishing (1) that she was qualified for the job of dispatcher and (2) that an individual outside of her protected class was treated more favorably than she. See id. at 18. The Court will address Defendant's second argument as it is dispositive of Plaintiff's discriminatory discharge claims.

Title VII requires Plaintiff to demonstrate that similarly situated individuals outside of the protected class were treated more favorably than she. See Kimble v. Morgan Prop., 2004 WL 2536838, at *3 (E.D. Pa. Nov. 8, 2004). Under Title VII, "to be deemed similarly situated[,] the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." McCann v. City of Philadelphia, 2004 WL 2040410, at *1 (E.D. Pa. Sept. 13, 2004) (quoting Anderson v. Haverford College, 868 F.Supp. 741, 745 (E.D. Pa. 1994) (citations omitted)); Atkinson v. Lafayette College, 2003 WL 21956416, *6 (E.D. Pa. 2003) ("Similarly situated employees are ones who have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or

the employer's treatment of them for it"). "Further, the proposed analogues must be similarly situated in all 'material respects.'" Dill v. Runyon, 1997 WL 164275, at *4 (E.D. Pa. April 3, 1997) (citations omitted). Thus, in a case alleging sexual discrimination, "[a] female sexual discrimination plaintiff must show that male employees did not suffer similar adverse employment actions, despite displaying the same problem which provoked and supported the adverse action suffered by the plaintiff." Pittman v. Continental Airlines, Inc., 35 F. Supp. 2d. 434, 443 (E.D. Pa. 1999) (citing Ludovico v. U.S. Healthcare, Inc., 1997 WL 288592, at *6 (E.D. Pa. May 21, 1997)).

Plaintiff asserts that she was "treated less favorably by Defendant as to Defendant's conditions of employment [sic]," and that since Scotts had no written overtime policy, its argument that the male dispatcher was working the overtime hours asked of her is a pretext for its discriminatory actions. Pl.'s Opp. at 24-25. Specifically, Plaintiff argues that she was treated less favorably than the male dispatcher, John Rule, because she was given a mandatory fixed minimum overtime schedule and he was not.[4] Plaintiff further argues that it is irrelevant to her

---

[4]    In her Opposition, Plaintiff also asserts for the first time that she was paid at the rate of $12.12 per hour while Rule was paid $17.50 per hour despite having worked at Scotts for less time. See Pl.'s Opp. at 24. As a general rule, a Title VII plaintiff cannot bring claims in a civil lawsuit that were not first included in an EEOC charge and exhausted at the administrative level. See Burgh v. Borough Council of Montrose, 251 F.3d 465, 469 (3d Cir. 2001). The relevant test to determine whether a plaintiff was required to exhaust her administrative remedies is whether the acts alleged in the subsequent suit are fairly within the scope of the prior administrative charges or the investigation arising therefrom. See Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996); Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." Rodgers v. Arlington Heights School Dist., 171 F. Supp. 2d 773, 777 (N.D. Ill. 2001) (quoting Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992)).
        Plaintiff's EEOC and PHRC charges make no allegations regarding wage discrimination, Defendant's position statement does not respond to any claims of wage discrimination, and the EEOC's right to sue notice makes no reference of an investigation of wage discrimination. See Def.'s Mot. at Exhibits P, O; Pl.'s Opp. at Exhibit 46. Plaintiff has not furnished any other evidence to suggest that she exhausted any potential wage discrimination claims. Accordingly,

discrimination claims that Rule, the only other dispatcher, was working over 55 hours per week,

the number of hours Scotts required of Plaintiff during the busy season, since he did so

voluntarily.  See id.

As a threshold matter, Defendant has established that all Scotts employees were

expected, and in fact required, to work overtime during the busy season.  Defendant has offered

testimony from four current or former Scotts employees, male and female, all of whom confirm

that employees were required to work overtime during the busy season, even though the company

did not have a written policy regarding overtime.  See Ambruso Dec. at ¶ 10 ("During the busy

season, dispatchers do not work 40 hours per week.  No dispatcher, male or female, has ever

been permitted to work such a schedule in the 17 years I have been at Scotts"); Witter Dep. at 27

("We had a practice of mandatory overtime due to the seasonal nature of our business.  Everyone

was required to work overtime"); Dawson Dep. at 17 ("We had meetings that would require us to

note when shipping season would be coming on and that we would have to work required

overtime"); Rule Dep. at 18-19 ("[W]hen I took the position I believed from the interview

process that I would be working 60 hours a week in season roughly").  Plaintiff has offered no

legal support for her contention that Scotts must have a written policy in order for the company's

overtime requirement to be valid.  Similarly, she has offered no evidence that overtime was

---

the Court does not have jurisdiction to consider Plaintiff's newly asserted wage discrimination
claim.  See, e.g., Lawton v. Sunoco, Inc., 2002 WL 1585582, at *4-5 (E.D. Pa. July 17, 2002)
(finding that African-American employee failed to exhaust administrative remedies under Title
VII with respect to his claims of wage discrimination where his EEOC charge alleged
discrimination only on the basis of failure to promote); Mack v. W.R. Grace Co., 578 F.Supp.
626, 632 (N.D. Ga. 1983) ("Discrimination with regard to salary, promotions, and training is not
so obviously related to discriminatory discharge, however, that the Court could expect an EEOC
investigation of a discharge to extend to such claims"); Sigmon v. Parker Chapin Flattau &
Klimpl, 901 F.Supp. 667, 675 (S.D.N.Y. 1995) (finding that the court lacked jurisdiction to hear
a female employee's allegations of wage discrimination because they were not "reasonably
related" to the discriminatory discharge allegations in her EEOC charge).

voluntary at Scotts.  Her general assertions are insufficient to establish a genuine issue of

material fact.  See Bellamy v. Best Nest, Inc., 2002 WL 32348284, at *3 n.8 (E.D. Pa. July 3,

2002) ("To defeat Defendants' motion, [Plaintiff] must point to specific facts in the record to

support her claims, rather than rely on general assertions").

Plaintiff has failed to establish a prima facie case since she has not shown that any male

employee at Scotts "did not suffer similar adverse employment actions, despite displaying the

same problem which provoked and supported the adverse action suffered by Plaintiff."  Pittman,

35 F. Supp. 2d. at 443 (citation omitted) (emphasis added).  As discussed above, employees at

Scotts were expected to work overtime during the busy season.  Defendant has offered evidence

that all employees, whether male or female, who assisted with dispatching duties during the 2004

busy season (specifically, John Rule, Ron Lambert, and Amy Roberts) were averaging more than

55 hours of work per work.  In fact, Plaintiff was the only employee performing dispatching

duties during the 2004 busy season who averaged fewer than 50 hours per week.  Plaintiff has

failed to identify any employee, male or female, who was permitted to work the same or less

hours during the busy season than she was asked to work.  Accordingly, Plaintiff has not

established a prima facie discrimination case and summary judgment on her discrimination

claims is appropriate.[5]

**B.      Retaliation Claims**

Title VII and the PHRA also make it illegal for an employer to discriminate against an

employee because she opposed a practice made unlawful by Title VII or the PHRA, or because

---

[5]      Both the Complaint and Opposition refer to discriminatory remarks Ambruso
allegedly made to Plaintiff during her pregnancy.  Plaintiff admitted during her deposition that
neither Ambruso nor any other Scotts employee made comments regarding her pregnancy or
gender that she found to be inappropriate (other than the allegedly discriminatory request that she
work overtime) after Plaintiff returned from maternity leave in June 2003.  See Pl.'s Dep. at 34.

12

she participated in any manner in an investigation or proceeding under either statute.  See 42

U.S.C. § 2000e-3(a); 43 P.S. § 955(d).[6]  To establish unlawful retaliation under Title VII, a

plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) her employer took an

adverse employment action against her either after or contemporaneous with her protected

activity; and (3) there is a causal link between the protected activity and the adverse action.  See,

e.g., Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997); Jones v. School

District of Philadelphia, 19 F. Supp. 2d 414, 421 (E.D. Pa. 1998).  A general complaint of unfair

treatment by an employee does not translate into a charge of illegal discrimination under Title

VII, and thus is not a protected activity.  See Slagle v. County of Clarion, 435 F.3d 262, 267-268

("we cannot dispense with the requirement that the plaintiff allege prohibited grounds"); Gautney

v. Amerigas Propane, Inc., 107 F. Supp. 2d 634, 645 (E.D. Pa. 2000) ("merely complaining about

unfair treatment does not constitute a protected activity"); Bartholomew v. St. Luke's Hospital-

Allentown Campus, 2003 WL 21250561, at *6 (E.D. Pa. April 29, 2003).

Once the plaintiff establishes a prima facie retaliation case, the analysis follows the

McDonnell Douglas framework and the burden shifts to the employer to advance "a legitimate

non-retaliatory reason" for its adverse action.  See Krouse, 126 F.3d at 500.  If the employer

satisfies its burden, the plaintiff must convince the fact finder "that the employer's proffered

explanation was false, and that retaliation was the real reason for the adverse employment

action."  Id. at 501.

Defendant argues that Plaintiff has failed to set forth a prima facie retaliation case

because she has not met her burden of establishing that she engaged in a protected activity.  See

---

[6]     Retaliation claims asserted under the PHRA are analyzed consistent with similar claims under Title VII.  See Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). Thus, as with Plaintiff's discrimination claims, the Court will limit its analysis of Plaintiff's retaliation claims to the standards for Title VII.

Def.'s Mot. at 28.  Defendant contends that the record demonstrates that Plaintiff only

complained generally of being treated differently or unfairly when asked to work overtime, and

that despite numerous interactions with her supervisors and Operations and Human Resources

Managers, she never communicated to anyone at Scotts that she believed she was being treated

differently because of her gender.  See id. at 30.

In support of its argument, Defendant points to numerous statements made by Plaintiff at

her deposition that she complained only of "unfair" treatment rather than of discriminatory

treatment based on her sex.  See Pl.'s Dep. at 42, 120, 121, 125, 128, 133, 135, 141-42.  When

Plaintiff was asked explicitly at her deposition whether she had told anyone at Scotts that she felt

singled out because of her sex or gender, Plaintiff admitted that she had not.  See id. at 207.

Moreover, Defendant offers declarations from Ambruso, Lena Broomell (office manager at the

plant where Plaintiff worked), and Marcia Agnew (human resources representative) stating that

Plaintiff "never complained to [them] that she felt she was being treated differently or unfairly

because of her sex and/or gender."  See Ambruso Dec. at ¶ 27; Broomell Dec. at ¶ 7; Agnew

Dec. at ¶ 7.

Plaintiff's Opposition contains a recital of the dates on which she spoke to Scotts

personnel regarding her treatment, and asserts that she complained that she was being treated

differently than the male dispatcher.  See Pl.'s Opp. at 28.  However, the Opposition does not

provide a single cite to the record to support these factual assertions, and the Court's examination

of the parties' submissions finds no support for Plaintiff's assertion that she complained

specifically of sexual discrimination.  Facts alleged in a brief or motion without evidentiary

support cannot be used to avoid summary judgment.  See Vendetta v. Bell Atlantic Corp., 1998

WL 575111, at *1 n.1 (E.D. Pa. Sept. 8, 1998).  Thus, Plaintiff has not presented any evidence

that she engaged in a protected activity since her general complaints regarding "unfair" treatment

are not sufficient.  Accordingly, Plaintiff has not established a prima facie retaliation claim and

summary judgment will be granted.[7]

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment will be

granted.  An appropriate order follows.

---

[7]       Defendant's Motion also argues (1) that Plaintiff has no evidence to suggest a
causal connection between Defendant's decision to terminate her and her complaints regarding
unfair treatment, and (2) that even if she were to establish a prima facie retaliation case, she
cannot prove that Defendant's proffered non-discriminatory reason for her termination is merely
pretextual.  See Def.'s Mot. at 31.  Because the Court finds that Plaintiff has not established that
she engaged in protected activity, it is unnecessary to reach these arguments.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY ECONOMOS                          :          CIVIL ACTION
                                        :
        v.                              :          NO.  05-271
                                        :
THE SCOTTS COMPANY                      :
                                        :
                                        :

## ORDER

   **AND NOW**, this      20th      day of November, 2006, upon consideration of

Defendant's Motion for Summary Judgment (docket no. 19), Plaintiff's Response thereto (docket

no. 22), and Defendant's Reply (docket no. 26), and for the reasons stated in the accompanying

Memorandum, it is **ORDERED** that the Motion is **GRANTED**.  Accordingly, the Clerk of the

Court shall mark this case **CLOSED**.


                                        BY THE COURT:


                                         /s/ Bruce W. Kauffman

                                        BRUCE W. KAUFFMAN,  J.